UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY KATHRYN BRADNER,

    Plaintiff,                                Civil Action No. 11-11636

v.                                            HON. NANCY G. EDMUNDS
                                              U.S. District Judge
                                              HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL               U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Mary Kathryn Bradner brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED, remanding this case for an award of benefits retroactive to the amended alleged onset date of April 23, 2007[1].

## PROCEDURAL HISTORY

---

[1] Although Plaintiff's application for benefits alleged disability as of June 1, 2003, at the administrative hearing, her counsel stipulated to an amended onset of disability date of April 23, 2007 (Tr. 48). While the ALJ referred to the date of the DIB and SSI applications as April 23, 2007, the applications for DIB and SSI state that Plaintiff applied on May 4, 2007 (Tr. 138, 145). Despite the erroneous calculation, the amended onset, as agreed, is April 23, 2007.

On May 4, 2007, Plaintiff filed applications for DIB and SSI alleging disability as of June 1, 2003 (Tr. 138, 145). After the initial denial of the claim, Plaintiff filed a request for an administrative hearing, held on January 12, 2010 in Dallas, Texas before Administrative Law Judge ("ALJ") Stanley M. Schwartz (Tr. 13, 29). Plaintiff, represented by attorney Ms. Warren, testified by teleconference from Detroit, Michigan (Tr. 32-41). Mr. Fairator, a social worker acquainted with Plaintiff also testified, as did Vocational Expert ("VE") Ms. Skinner (Tr. 41-49, 50-53). On March 26, 2010, ALJ Schwartz found Plaintiff not disabled (Tr. 22). On March 25, 2011, the Appeals Council denied review (Tr. 1-4). Plaintiff filed for judicial review of the Commissioner's decision on April 15, 2011.

**BACKGROUND FACTS**

Plaintiff, born November 6, 1957, was 52 when the ALJ issued her decision (Tr. 22, 138). She attended special education classes and graduated in 1976 (Tr. 168). She worked previously as a cafeteria attendant, laundry worker, and food service worker (Tr. 163). She alleges disability as a result of mild mental retardation, developmental ankle conditions resulting in arthritis of the feet and legs, and cerebral palsy (Tr. 162).

.   **Plaintiff's Testimony**

Plaintiff began her testimony by stating that she attended special education classes throughout school (Tr. 32). She reported that in 1995, she worked in the "bottle department" at a large chain store and that the work required her to lift anywhere between 50 and 75 pounds (Tr. 33). She stated that she next worked as a prep cook but was overwhelmed by the job demands (Tr. 34). She stated that during the tenure of her next job as a fast food worker, she experienced foot swelling (Tr. 35). At this point in the testimony, Plaintiff's counsel noted that her client's sporadic work in the fast food industry had not amounted to

Substantial Gainful Activity ("SGA") as defined by SSA regulations[2] (Tr. 36).

Plaintiff denied the ability to stand for more than 15 minutes at a stretch (Tr. 36). She stated that her most comfortable position was seated with her feet above chest level (Tr. 36-37). She indicated that she experienced leg swelling when sitting upright (Tr. 37). She stated that she took diuretics daily, resulting in the need to urinate every half hour (Tr. 37). Plaintiff reported that both physical and mental problems prevented her from working, adding that she had problems concentrating (Tr. 39).

### B. Testimony of Mr. Fairator

Mr. Fairator, a social worker, testified that he was acquainted with Plaintiff through a mental health outreach program but that she was not his client (Tr. 41-42). He stated that he had known Plaintiff for five years (Tr. 41). He stated that he worked with Plaintiff's "significant other" (Tr. 42). He indicated that he had spoken with Plaintiff on numerous occasions and observed her interacting with others (Tr. 43).

Mr. Fairator stated that Plaintiff exhibited a poor ability to deal with routine changes (Tr. 43). Based on his professional experience with individuals with similar mental challenges, he opined that Plaintiff would experience difficulty coping with workplace changes (Tr. 44). He found that Plaintiff would find it difficult to adapt or understand how to respond to change (Tr. 44).

---

[2] The transcript shows that Plaintiff received $4,280.08 in 2003, placing the year's earnings well below the amount required to establish SGA (average monthly income of $800 x 12 = $9,600) (Tr. 134). *Program Operations Manual System DI 10501.015: Tables of SGA Earnings Guidelines and Effective Dates Based on Year of Work Activity,* Social Security Online (Oct. 21, 2011), https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015.

### C. Medical Evidence

#### 1. Treating Sources

April, 2004 treating notes state that Plaintiff was "homeless and jobless" (Tr. 298). Plaintiff was deemed "slow" but not mentally ill (Tr. 296). She was noted to have lost a recent job at White Castle due to "slow work performance" (Tr. 286). The following month, her treating source noted that Plaintiff had been unsuccessful in obtaining work, questioning whether Plaintiff's "slowness" would make her eligible for special services (Tr. 298). In July, 2004, Plaintiff was hired for a "live in" position at the homeless shelter (Tr. 293). Treating notes from February, 2005 state that Plaintiff was currently homeless (Tr. 222, 230). March, 2005 treating notes state that Plaintiff experienced swelling of the entire leg with pitting edema (Tr. 403). In April and May, 2005, Plaintiff, still homeless, reported continued lower extremity edema, apparently due to a combination of "being on her feet all day walking while she [was] looking for a job" and the fact that a shortage of beds at the shelter required her to sleep in a chair (Tr. 261, 232).

In August, 2005, Plaintiff's case manager, Robert Kraft, composed a letter to the 15th District Court of Michigan on Plaintiff's behalf regarding a number of unpaid traffic tickets (Tr. 280). Kraft stated that Plaintiff experienced "cognitive difficulties that cause her to be slow and generally too low functioning to maintain regular employment, but . . . not low enough functioning to qualify for employment/job training assistance services or disability" (Tr. 280). He noted that Plaintiff had lost several jobs due to slowness (Tr. 281). Plaintiff, currently working on a farm in exchange for room and board, reported that her employer forced her to work from 6:00 a.m. to 9:00 p.m. everyday except Sunday (Tr. 279). In November, 2005, Plaintiff was again homeless but looking for work (Tr. 252). In January, 2006, Mark J. Lowell, M.D. observed lower extremity swelling (Tr. 225). Notes from the

following month and April and May, 2006 also show leg swelling (Tr. 244, 250, 373). May, 2006 treating notes state that Plaintiff was now staying with a friend (Tr. 373). February and July, 2007 treating notes indicate that Plaintiff still experienced leg swelling (Tr. 364, 394). November, 2008 treating notes again indicate leg pain and swelling (Tr. 415). March, 2009 treating notes state that Plaintiff had been diagnosed with diabetes (Tr. 414). In December, 2009, Raymond Rion, M.D. opined that Plaintiff would be required to take a bathroom break once an hour as a result of diuretic use (Tr. 439).

### 2. Consultive and Non-Examining Sources

In August, 2007, Jared Griffith, D.O. performed a consultive physical examination of Plaintiff on behalf of the SSA (Tr. 309). Plaintiff reported constant foot and ankle pain, but admitted that she could stand for 30 minutes at a stretch (Tr. 307). She indicated that she took albuterol for asthma control (Tr. 307). Dr. Griffith noted ankle swelling but no tenderness (Tr. 308). Plaintiff demonstrated a full range of motion in all extremities (Tr. 308). Dr. Griffith found that Plaintiff interacted appropriately (Tr. 309). A Physical Residual Functional Capacity Assessment performed the same month found that Plaintiff could lift 50 pounds occasionally and 25 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 352). Plaintiff was deemed capable of all postural activities on a frequent (as opposed to *constant*) basis (Tr. 353). The Assessment found the absence of manipulative, visual, or communicative limitations but found that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and other respiratory hazards (Tr. 354-355). Plaintiff's allegations of limitations were found to be unsupported by the medical evidence (Tr. 356). The Assessment's author, Rainell Bell, reviewed Plaintiff's social history, noting that she had been homeless following

her boyfriend's imprisonment (Tr. 310). He cited a 2006 report that Plaintiff appeared to be "coping well" following her mother's death (Tr. 310). Bell noted that Plaintiff had "been down on her luck," but could perform unskilled work (Tr. 311).

An August, 2007 case analysis by Syd Joseph, M.D. found that Plaintiff could "do simple repetitive tasks on a regular and continuous basis" (Tr. 312, 332). He performed a Psychiatric Review Technique ("PRT") of Plaintiff's mental condition between June 1, 2003 and March 31, 2006, finding that due to mild mental retardation, Plaintiff experienced moderate limitations in social functioning and concentration, persistence, and pace (Tr. 318, 324). He also completed a Mental Residual Functional Capacity Assessment, finding that Plaintiff experienced moderate difficulty understanding, remembering, and carrying out detailed instructions and maintain concentration for extended periods (Tr. 328). She was also deemed moderately limited in the ability to get along with coworkers, respond appropriately to workplace changes, and make independent plans (Tr. 329). A PRT and Mental Residual Functional Capacity Assessment of Plaintiff's condition between April and August, 2007, also performed by Dr. Joseph, contain identical findings (Tr. 333, 337, 343, 347-348).

In December, 2009, Thomas S. Rosenbaum Ph.D. conducted a psychological evaluation, including intelligence testing (Tr. 434-438). Dr. Rosenbaum observed that Plaintiff "appeared to give up quickly on some of the items," opining that the examination results "slightly underestimate[d] her abilities" (Tr. 436). Plaintiff "struggled" with abstract language reasoning and expression but did better on digit recall and visual-motor speed (Tr. 436). Dr. Rosenbaum observed that in the course of screening for emotional difficulties, "[t]he scores reflect mild exaggeration of symptomatology . . ." (Tr. 437). Plaintiff was diagnosed with a learning disorder related to borderline intelligence (Tr. 437). She was

assigned a GAF of 55[3] (Tr. 437).

### D. Vocational Testimony

In response to the ALJ, VE Skinner stated if Plaintiff were required to keep her legs elevated above table level for two hours in an eight-hour workday, all work, including sedentary, would be precluded[4] (Tr. 49). The VE testified further that marked deficiencies in the ability to adapt to workplace changes would also preclude all work (Tr. 50). The ALJ then posed a hypothetical question to the VE taking into account Plaintiff's age, education, and work experience:

> [A]ssuming that she could . . . lift 20 pounds occasionally and 10 pounds frequently. And that she would be able to perform a job where she could sit or stand at her option and be able to, you know, stand at least four hours and sit four hours. And that she could do work that was simple one to two step type work. Would she be able to perform any of her past work?

(Tr. 50). The VE testified that given the hypothetical limitations, Plaintiff would be unable to perform her past relevant work but could work as a silverware wrapper (light, unskilled, SVP:1, Dictionary of Occupational Titles ("DOT"), 318.687-018, 4,800 positions in the regional economy)[5]; surveillance system monitor (sedentary, unskilled, SVP: 2, DOT

---

[3] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR*), 30 (4th ed.2000).

[4] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

[5] "SVP ratings measure the 'amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average

379.367-010, 550 positions); and food and beverage order clerk (sedentary, unskilled, SVP: 2, DOT, 209.567-014, 530 positions) (Tr. 50-51).

### E. The ALJ's Decision

Citing Plaintiff's medical records, ALJ found that Plaintiff experienced the severe impairments of arthritis of the ankles, diabetes, obesity, hyperlipidemia, and borderline intellectual functioning, but that none of the conditions met or medically equaled an impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for light work with "[a] sit stand option at will and . . . limited to simple one and two step job functions" (Tr. 17). Citing the VE's testimony, the ALJ concluded that Plaintiff was unable to perform her past relevant work but could perform the work of a silverware wrapper, order checker, and monitor (Tr. 20-21).

The ALJ discounted Plaintiff's allegations of disability, citing December, 2009 intelligence testing in support of the conclusion that she was malingering (Tr. 19). He found that Plaintiff experienced moderate deficiencies in social functioning as well as concentration, persistence, and pace (Tr. 17).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of*

---

performance in a specific job-worker situation.' *See* Dictionary of Occupational Titles, Appendix C, available at htt p://www.occupationalinfo.org/appendxc_1.html (last visited on March 1, 2011). A job with an SVP rating of 1 corresponds to a job that a typical worker can perform after a 'short demonstration only.' A job with an SVP rating of two corresponds to a job that a typical worker can perform after 'anything beyond short demonstration up to and including 1 month.' *Id.*" *Belden v. Commissioner of Social Sec.*, 2011 WL 2935673, *5, fn.6 (W.D.Mich. 2011)

*Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at

step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### The Vocational Testimony

Plaintiff contends that substantial evidence does not support the ALJ's Step Five finding. *Plaintiff's Brief* at 3-9. First, she argues that the limitations of "simple one and two step job functions" in the hypothetical question did not fully address her moderate deficiencies in concentration, persistence, and pace.[6] *Id.* at 3-6 (citing 17, 50). On a related note, she contends that the hypothetical question did not reflect her moderate social deficiencies. *Id.* at 6-7. She contends that the omission of these key impairments from the hypothetical question invalidates the VE's job findings. Plaintiff makes an independent argument that the VE's testimony was not consistent with the information found in the Dictionary of Occupational Titles as required by SSR 00-4p. *Id.* at 7-9.

Plaintiff's first two arguments, both regarding the sufficiency of the hypothetical question, can be considered together.

   A.  **The Hypothetical Question**

   1.  **Basic Principles**

At Step Five of the administrative sequence, "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and

---

    6

Defendant's assertion that the ALJ found only *mild* deficiencies in social functioning and concentration, persistence, and pace, *Defendant's Brief* at 13, amounts to a misreading of the record. The ALJ explicitly found *moderate* deficiencies in both social functioning and concentration, persistence and pace (Tr. 17).

-10-

mental impairments" *Varley v. Commissioner of Social Security,* 820 F.2d. 777, 779 (6th Cir. 1987)(internal citations omitted); *Webb v. Commissioner of Social Sec.* 368 F.3d 629, 632 (6th Cir.2004). The failure to account for moderate deficiencies in concentration, persistence and pace ("CPP") constitutes reversible error. *Ealy v. Commissioner of Social Sec.,* 594 F.3d 504, 516 -517 (6th Cir. 2010) ("simple repetitive tasks" limitation, by itself, insufficient to account for moderate deficiencies in CPP). "[U]nskilled work," or "simple work" are generally insufficient to account for moderate deficiencies in CPP. *See Bankston v. Commissioner,* 127 F.Supp.2d 820, 826 (E.D.Mich.2000)(Zatkoff, J.); *Benton v. Commissioner of Social Sec.* 511 F.Supp.2d 842, 849 (E.D.Mich.,2007)(Roberts, J.); *Edwards v. Barnhart,* 383 F.Supp.2d 920, 931 (E.D.Mich.2005) (Friedman, J.); *Newton v. Chater,* 92 F.3d 688, 695 (8th Cir.1996); *McGuire v. Apfel,* 1999 WL 426035, 15 (D.Or.1999); *Roe v. Chater,* 92 F.3d 672, 676–77 (8th Cir.1996).

Of course an ALJ is not required to include the phrase "moderate deficiencies in concentration, persistence, and pace" or other talismatic language in the hypothetical to avoid remand, *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001); *Webb, supra,* 368 F.3d at 633*,* and the limitations of "simple and repetitive," "routine," or "one to two step tasks" are not *always* insufficient to address moderate deficiencies in CPP. *See Sutherlin v. Commissioner of Social Sec.,* 2011 WL 500212, *3 (E.D.Mich. 2011)(evidence of record did not require more than a hypothetical limitation of one to two step tasks despite a finding of moderate deficiencies in CPP). Moreover, *Ealy, supra*, does not state that the "simple, repetitive," or other succinct references to moderate concentrational problems are intrinsically inadequate to address moderate CPP deficiencies. Rather, the *Ealy* Court held that the hypothetical limitations of "simple, repetitive" (drawn from a non-examining medical source) impermissibly truncated the overall finding that the claimant should be limited to

"simple repetitive tasks to '[two-hour] segments over an eight-hour day where speed was not critical.'" *Id.,* 594 F.3d at 516. Thus, the evidence of record and the ALJ's opinion must be considered in their entirety in determining whether the hypothetical limitations adequately describe the claimant's limitations. *See Smith, supra.*

**2. Application to the Present Case**

Here, in contrast to *Sutherlin, supra,* the limitations of "simple one and two step job functions" do not fully describe Plaintiff's limitations. The ALJ relied on Dr. Joseph's August, 2007 non-examining assessment for the finding that Plaintiff experienced moderate limitations in concentration, persistence, and pace (Tr. 17, 324). So far, so good. However, the hypothetical limitation of "one to two step tasks," does not adequately account for Plaintiff's well-established *pacing* problems created by her cognitive problems. *See Edwards, supra,* 383 F.Supp.2d at 930 -931. ("simple, routine, and unskilled" insufficient to address pacing problems, *i.e.,* whether claimant may "be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job").

The failure to address Plaintiff's pacing deficiencies constitutes reversible error. To be sure, an ALJ is not required to use unsubstantiated allegations in his hypotheticals. *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994). However, the present medical transcript includes uncontradicted evidence that Plaintiff experienced pacing problems. The treating record shows that she lost a job at White Castle due to "slow work performance" (Tr. 286). In May, 2004, a treating source observed that Plaintiff's "slowness" could possibly qualify her for government assistance (Tr. 298). Plaintiff's case manager opined that she functioned too slowly to hold regular employment (Tr. 280). Aside from the fact that Plaintiff's well-established borderline intelligence would be reasonably expected to create pacing problems, Plaintiff herself testified that she was

unable to hold a job because of her inability to stay apace of her work duties (Tr. 34, 39). By itself, the failure to account for these well-documented pacing deficiencies constitutes reversible error.

The hypothetical question to the VE contains additional error. The "one to two step" inclusion is based on the ALJ's erroneous finding that Dr. Rosenbaum "stated that Plaintiff retain[ed] the ability to perform simple one to two step work" (Tr. 19). In fact, Dr. Rosenbaum's assessment does not contain any such finding or even contain the phrase "one to two step work" or synonymous language (Tr. 434-438). The ALJ also cited Dr. Rosenbaum's report to support his conclusion that Plaintiff was malingering, finding that she "was non-compliant and did not give a full effort during her consultative evaluation" (Tr. 20). The ALJ's summation does not reflect the actual import of Dr. Rosenbaum's report, which stated that Plaintiff was "cooperative" but "appeared to give up quickly on some of the items" (Tr. 435-436). Dr. Rosenbaum's findings in no way suggest that Plaintiff *deliberately* attempted to lower her score, and in fact Dr. Rosenbaum stated that "[h]er overall achievement levels are consistent with levels of intelligence" (Tr. 437). Dr. Rosenbaum's most negative finding was that the scores pertaining to emotional difficulties reflected only "mild exaggeration of symptomatology . . ." (Tr. 437).

Finally, I agree with Plaintiff's argument that although the ALJ found that she experienced moderate limitations in social functioning, the hypothetical question does not account for this deficiency by, for example, limiting interaction with supervisors, coworkers, or the public. While the ALJ adopted Dr. Joseph's conclusion that Plaintiff could do simple repetitive tasks on a regular and continuous basis, he ignored Dr. Joseph's additional findings that she was moderately limited in the ability to get along with coworkers, respond appropriately to workplace changes, and make independent plans (Tr. 329). In particular,

the VE's finding that Plaintiff could perform the job of food and beverage order clerk would appear to be impacted by moderate limitations in social functioning (Tr. 51). Remand is warranted for all of the above-discussed errors.

### B. SSR 00-4p

Plaintiff argues further that the ALJ failed to ask the VE whether his job testimony was consistent with the information found in the DOT as required by SSR 00-4p. *Plaintiff's Brief* at 7-9. She also contends that the failure to inquire was coupled with actual conflicts between the VE's testimony and the DOT. *Id.*

> SSR 00–4p provides in pertinent part:
>
> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT.

2000 WL 1898704, at *4. "In an effort to insure that such actual or apparent conflicts are addressed, the Social Security Administration has imposed an affirmative duty on ALJs to ask the VE if the evidence that he or she has provided 'conflicts with [the] information provided in the DOT.'" *Lindsley v. Commissioner of Social Sec.* 560 F.3d 601, 603 (6th Cir.2009) (*citing* SSR 00–4p, 2000 WL 1898704, at *4). "ALJs must also 'obtain a reasonable explanation for ... apparent conflict[s]' if the VE's evidence "appears to conflict with the DOT." *Id.* ( *citing* 2000 WL 1898704, at *4). Here, the ALJ did not fulfill his duty to inquire about conflicts with the VE's testimony and the DOT.

While the failure to make the required inquiry is considered harmless error in the absence of a definable conflict, such is not the case here. The hypothetical limitations included a sit/stand restriction, allowing Plaintiff to perform her job in either a sitting or standing position (Tr. 50). But the DOT does not state whether the jobs in fact provide for a sit/stand option. *Baranich v. Barnhart,* 128 Fed.Appx. 481, 487, fn 3 (6th Cir. 2005).

Thus, despite the fact that the VE included DOT codes with his job findings, he could not have drawn his sit/stand findings from the DOT.

The overarching purpose of the Regulation is to ensure that the VE's testimony is well supported. Although vocational experts are permitted to rely on evidence other than the DOT, *Id.,* they are required to provide the basis for the findings. "Because the VE's testimony was the only step five evidence that the ALJ relied upon, the Court cannot rule that there is substantial evidence to support the ALJ's findings." *Teverbaugh v. Comm'r of Soc. Sec.,* 258 F.Supp.2d 702, 706 (E.D.Mich.2003)(Roberts, J.). Here, the source of the "sit/stand" testimony is unknown, as is whether the source otherwise conflicts with any other information found in the DOT. The only thing that can be said with certainty is that *some* of the VE's job findings were drawn from sources other than the DOT. As such the statement found in ALJ's decision, "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the [DOT]" is not supported by substantial evidence (Tr. 21).

Plaintiff also notes that two of the VE's job findings, order clerk and surveillance system monitor, require a General Education Development Reasoning Level ("GED") of three, arguing that the hypothetical limitations of "one to two step tasks" would preclude these jobs (Tr. 50-51). Reasoning Level three requires the job holder to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and] [d]eal with problems involving several concrete variables in or from standardized situations." DOT at 1011: Revised Fourth Edition, 1991.

The record in the present case does not support the conclusion that Plaintiff is capable of solving problems "involving several concrete variables" or carrying out "instructions furnished in "written, oral [and/or] diagrammatic form." *Id.* Indeed, the non-examining

source from which the ALJ drew his psychological findings noted that Plaintiff would experience significant problems understanding, remembering, or carrying out detailed instructions (Tr. 328). As such, "a substantial question exists about whether an unskilled job with a reasoning level of 3 can be done by someone with . . . cognitive limitations." *Hartsfield v. Astrue* 2010 WL 3660714, *4 (S.D. Ohio 2010). "Jobs requiring GEDs of three or four "might well be inconsistent with the finding that plaintiff was able to carry out only simple one- or two-step job instructions". *Id.* at *2. Although the questionable job testimony provides independent grounds for remand, it is compounded by the above-described errors in the hypothetical question.

**C. Remand**

The final question is whether to remand for further administrative proceedings and findings or to remand for an award of benefits using Plaintiff's disability onset date for calculating past due benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir.1994), and *Newkirk v. Shalala,* 25 F.3d 316, 318 (6th Cir.1994), hold that it is appropriate to remand for an award of benefits when "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id.* This entitlement is established if "the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. *Faucher,* 17 F.3d at 176 (citing *Mowery v. Heckler,* 771 F.2d 973 (6th Cir.1985)).

The ALJ's decision contains critical mis-statements of the record. Moreover, an undistorted reading of the entire transcript points strongly to an award of benefits. In addition to the arguments addressed above, several additional factors support an award of benefits rather than a remand for further fact-finding. First, the credibility determination, like the hypothetical question, is based on erroneous findings. As discussed above, the ALJ's

finding that Plaintiff was malingering (purportedly relying on Dr. Rosenbaum's conclusions) is not supported by the plain language of the consultive examiner's report (Tr. 436-437). While Dr. Rosenbaum observed that Plaintiff gave up easily on the questions found in a certain portion of the exam, his report can be more easily interpreted to suggest that Plaintiff, diagnosed with borderline intelligence functioning, was simply overwhelmed by demands of undergoing intelligence testing. Moreover, the great weight of evidence supports the conclusion that Plaintiff was not malingering. The ALJ did not discuss numerous treating records stating that although Plaintiff had taken refuge at a homeless shelter, she continued to spend her waking hours looking for work. The same treating notes also state that Plaintiff looked forward to working and was apparently not deterred from trying to find work even after being terminated on several occasions for "slowness."

Defendant asserts that substantial evidence nonetheless supports the ALJ's decision, arguing that Plaintiff's ability to work on a farm for three months during the alleged period of disability shows that she is not disabled. *Defendant's Brief* at 17 (citing Tr. 279). However, the case notes cited by Defendant do not state whether Plaintiff was able to fulfill the job requirements of the position or if the work was accommodated to suit Plaintiff's limitations (Tr. 279). To the contrary, the notes indicate that relations with her "'employer'" quickly broke down over a cell phone bill and the employer's expectation that Plaintiff would work between 6:00 a.m. to 9:00 p.m. six days a week in exchange for room and board (Tr. 279). The more reasonable inference to be drawn from these notes is that the "'employer'" (quotation marks in original) attempted to exploit Plaintiff's cognitive limitations for the purpose of obtaining cheap labor. For overlapping reasons, Plaintiff's ability to attend a knitting class does not support the contention that she is able to perform substantial gainful activity or interact appropriately with others in a workplace setting. *Defendant's Brief* at 18

(citing Tr. 285). Likewise, treatment notes stating that Plaintiff could attend a knitting class do not show whether she interacted with other students, and provide no insight into her work related abilities. *Id.*

Likewise, the ALJ's findings regarding Plaintiff's physical problems are not well supported. The ALJ's reliance on a one-time consultive examiner's observation that Plaintiff's ankle swelling was only mild (Tr. 308) rather than the treating source findings that the condition (including "pitting" edema) required regular medical attention and medication (Tr. 225, 232, 244, 250, 261, 364, 373, 394, 403, 415) amounts to a distortion of the record. While the RFC admittedly restricted Plaintiff to sit/stand work, the treating records state that she experienced the condition while both sitting and standing (Tr. 232, 261). Further, the credibility determination, hypothetical question, and RFC all omit mention of Plaintiff's ongoing use of diuretics or that the medication created the need for frequent bathroom visits, despite the fact that such a limitation was well established in the record before the ALJ (Tr. 36, 38-39, 439). Instead, the ALJ erroneously found that Plaintiff took "only pain medication for physical conditions" (Tr. 19). Thus, both the credibility determination and hypothetical question are premised on misstatements of the record.

Aside from the above discussed errors, a hypothetical question accounting for all of Plaintiff's well established limitations would be expected to significantly erode, if not eliminate the light job base. I note that the exertionally light job base is already significantly reduced by Plaintiff's need for a sit/stand at will option. *See Waters v. Commissioner of Social Sec.,* 2012 WL 511998, *3 (E.D.Mich.2012)(sit/stand option would reduce light jobs by 50 percent); *Grubb v. Commissioner of Social Sec.,* 2011 WL 846073, *2 (E.D.Mich.2011)(sit/stand option reduced existing light jobs by 90 percent). A hypothetical question also reflecting the need for frequent bathroom breaks and moderate concentrational

and social deficiencies would eliminate a significant number, if not all of the existing light jobs. A finding that Plaintiff (now 54 and unable to perform any past relevant work) was capable of only sedentary work would direct a finding of disabled. 20 C.F.R. Pt. 404 Subpt. P, App. 2, § 201.09.

Accordingly, because the erroneous findings are coupled with uncontradicted evidence of disability, I find that Plaintiff is entitled to an award of benefits.[7] *Faucher,* 17 F.3d at 176.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED, remanding this case for an award of benefits retroactive to the amended onset date of April 23, 2007.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D.

---

[7] Further, the ALJ's "on the record" conjecture that Plaintiff manipulated the timing of her application to coincide with her 50th birthday is of some concern, given Plaintiff's cognitive limitations and the fact that the ALJ also noted that Plaintiff "probably doesn't" understand the process or import of amending her onset of disability date (Tr. 48).

Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                        S/ R. Steven Whalen
                                        R. STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE

Dated: April 30, 2012